# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEANDRE PENNINGTON,** : | |
|      Petitioner, : | |
| : | |
| v. : | CIVIL ACTION NO. 17-330 |
| : | |
| : | |
| **ERIC TICE,** *et al.*, : | |
|      Respondents. : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                         **March 18, 2019**

     *Pro se* Petitioner Deandre Pennington has filed objections to the conclusion of the Report and Recommendation ("R&R") filed by United States Magistrate Judge Lynne A. Sitarski that his Petition for habeas corpus relief under § 2254 is untimely. For the reasons that follow, the Court will overrule the objections and deny the Petition.

## I.    PROCEDURAL HISTORY

     On September 17, 2010, having pleaded guilty to one count of aggravated assault[1] and one count of criminal conspiracy to commit aggravated assault[2] in the Philadelphia Court of Common Pleas, Petitioner was sentenced *in absentia*[3] to an aggregate term of 20 to 40 years of imprisonment.[4] Petitioner did not file any post-sentencing motions or a direct appeal to the Pennsylvania Superior Court, and remained a fugitive for 98 days after his sentencing until he was apprehended on January 24, 2011.

---

[1] 18 Pa. Cons. Stat. Ann. § 2702.

[2] *Id.* § 903.

[3] Petitioner failed to appear for his sentencing hearing. He had been on house arrest with electric monitoring, but removed his monitoring system and absconded.

[4] According to the Philadelphia Court of Common Pleas record, Petitioner was one of five people who beat a victim into unconsciousness, using fists, feet, a six-foot long bed post, and a glass bottle. As a result, the victim suffered lacerations across his body, and head trauma that caused impaired cognitive functioning.

On September 30, 2011, Petitioner filed a timely counseled petition[5] under the Pennsylvania Post Conviction Relief Act[6] ("PCRA"). The PCRA Court dismissed the petition, and Petitioner filed a notice of appeal to the Pennsylvania Superior Court,[7] which affirmed the denial of PCRA relief. Still represented by counsel, Petitioner then filed a petition for allowance of appeal on August 18, 2016, which was denied by the Pennsylvania Supreme Court on November 29, 2016.

On January 9, 2017, Petitioner filed his *pro se* habeas Petition in this Court, and it was referred to the Magistrate Judge, who ordered that Petitioner show cause as to why his federal petition should not be dismissed as time-barred. Petitioner filed a response brief with exhibits. The R&R concluded that the Petition was untimely and did not reach the merits of the claims.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996[8] ("AEDPA") governs this petition. Under the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[9] Where, as here, the habeas petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court shall conduct a *de novo* review of "those portions of the report or specified proposed findings or recommendations to

---

[5] Attorney Lea T. Bickerton was retained by Petitioner to represent him during the time of his PCRA petition. Before retaining attorney Bickerton, Petitioner was represented by attorney Gerald A. Stein during the guilty plea hearing and at sentencing.

[6] 42 Pa. Cons. Stat. Ann. §§ 9541, *et seq.*

[7] The appeal was filed by and through his newly retained counsel, D. Wesley Cornish.

[8] 28 U.S.C. § 2254.

[9] *Id.* § 2254(a).

which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[10]

The AEDPA imposes a one-year statute of limitations on filing a federal habeas petition, a time period which generally begins to run from "the date on which the [state court] judgment became final by conclusion of direct review or the expiration of time for seeking such review."[11] Under Pennsylvania law, a defendant may file an appeal within 30 days from the date of entry of the order for which the appeal was taken.[12] If a defendant does not file an appeal within the 30 days, the judgment becomes final,[13] and the clock starts to run.

The AEDPA's limitations period is subject to both statutory and equitable tolling.[14] Statutory tolling applies while a timely state post-conviction petition is filed during the time the action is pending in state courts, including any post-conviction appeals, so long as it is filed and pending before the expiration of the AEDPA's limitations period.[15] Equitable tolling is applied more sparingly, and occurs when the petitioner demonstrates (1) the existence of "extraordinary circumstances" which prevented him from filing in a timely manner, *and* (2) that he acted with reasonable diligence to investigate and bring his claims.[16] When analyzing whether equitable

---

[10] 28 U.S.C. § 636(b)(1).

[11] 28 U.S.C. § 2244(d)(1).

[12] Pa. R.A.P. 903(a).

[13] *Commonwealth v. Anderson*, 788 A.2d 1019, 1021 (Pa. Super. Ct. 2001) (citing 42 Pa. Cons. Stat. Ann. § 9545(b)(3); Pa. R. Crim. P. 720(A)(3)).

[14] *See* 28 U.S.C. § 2244(d)(2) (addressing statutory tolling as it applies to the limitations period); *Holland v. Florida*, 560 U.S. 631, 634 (2010) ("[T]he timeliness provision in the federal corpus statute is subject to equitable tolling.").

[15] *Swartz v. Meyers*, 204 F.3d 417, 424–25 (3d Cir. 2000).

[16] *Holland*, 560 U.S. at 648–49; *LaCava v. Kyler*, 398 F.3d 271, 276 (3d Cir. 2005) (citing *Fahy v. Horn*, 240 F.3d 239, 244–45 (3d Cir. 2001)); *see also Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002) (citation and internal quotation marks omitted) ("[W]e have cautioned that a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice."). This conjunctive standard requires proving both elements before permitting such tolling. *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) (citation omitted).

tolling should apply, "'the particular circumstances of each petitioner must be taken into account,' and each decision made on a 'case-by-case basis.'"[17]

**III.   DISCUSSION**

Petitioner does not dispute that his federal habeas petition is untimely, and that statutory tolling cannot excuse the untimeliness of his petition. As Petitioner concedes, he had one year from October 18, 2010—thirty days after the judgment in his criminal case—to file his federal petition, since he did not file any post-sentence motions or a direct appeal.[18] The clock ran for 347 days before Petitioner filed his timely PCRA petition on September 30, 2011, which tolled the limitations period until the Pennsylvania Supreme Court denied his petition for allowance of appeal on November 29, 2016.[19] Petitioner then had 18 days of the federal one-year period remaining, which required him to file the Petition by Monday, December 19, 2016.[20] The Petition was filed on January 9, 2017—21 days beyond the statute of limitations period.[21]

Petitioner argues that the R&R improperly concluded that equitable tolling was inappropriate, without properly addressing the facts and supporting documentary exhibit evidence.[22] According to Petitioner, his lack of personal notice from the Pennsylvania Supreme Court regarding the denial of his petition for allowance of appeal was an extraordinary

---

[17] *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (internal citations omitted).

[18] 28 U.S.C. § 2244(d); Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 2-3.

[19] Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 4, 21; *see Carey v. Saffold*, 536 U.S. 214, 219–20 (2002) (holding that an action is "pending" for purposes of § 2244(d)(2) "as long as the ordinary state collateral review process is 'in continuance'").

[20] Because the expiration date fell on Saturday, December 17, 2016, the limitations period extended to the next day that was not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6(a)(1)(c); *Wilson v. Beard*, 426 F.3d 653, 662–63 (3d Cir. 2005) (holding that former Federal Rule of Civil Procedure 6(a) applies to federal habeas petitions and their one-year limitation period).

[21] Pet. for Writ of Habeas Corpus [Doc. No. 1] at 16. Under the prison mailbox rule, a prisoner's *pro se* petition is considered filed when delivered to prison officials for mailing. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

[22] Pet'r's Objs. to Magistrate's R. & R. [Doc. No. 23] at 1, 2.

circumstance that made it impossible for him to know when he had to file his federal habeas petition. Petitioner also argues that contrary to the R&R's finding, he actively and diligently pursued his rights.

### A. Extraordinary Circumstances

Petitioner first claims that the R&R incorrectly asserted that Petitioner attributes his extraordinary circumstances toward his attorney's failure to notify him of the November 29, 2016 denial order from the Pennsylvania Supreme Court. Petitioner argues instead that the Pennsylvania Supreme Court itself failed to personally notify him of that decision, which constituted extraordinary circumstances.

The Third Circuit generally requires district courts to analyze extraordinary circumstances subjectively, and on a case-by-case basis.[23] "[T]he proper inquiry is *not how unusual the circumstance* alleged to warrant tolling is among the universe of prisoners, . . . *but rather how severe an obstacle it is for the prisoner* endeavoring to comply with AEDPA's limitations period."[24] A situation beyond the petitioner's control therefore may be considered severe enough to constitute an "extraordinary circumstance,"[25] so long as there is a causal nexus between that circumstance and the petitioner's failure to file a timely federal petition.[26]

The Third Circuit, however, has explicitly held that in non-capital cases where a petitioner is being represented by counsel in state collateral proceedings, a petitioner's failure to receive personal notice of the Pennsylvania Supreme Court's denial of the petition for allowance of appeal is not, by itself, an extraordinary circumstance for purposes of equitable tolling, in part

---

[23] *Ross*, 712 F.3d at 799, 802.

[24] *Id.* at 803 (citation omitted) (emphasis in original).

[25] *Schlueter v. Varner*, 384 F.3d 69, 81 (3d Cir. 2004) (citation omitted).

[26] *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (citation omitted) (finding that an extraordinary circumstance "must somehow have affected the petitioner's ability to file a timely habeas petition").

5

because the Pennsylvania Rules of Appellate Procedure do not entitle a petitioner to personal notice of such denial order.[27] Thus, Petitioner's lack of personal notice does not provide a basis for equitable tolling.[28]

Additionally, nothing in the record suggests that Petitioner was prevented from making an earlier inquiry of his attorney, or from obtaining the necessary documents while in prison. Petitioner filed his petition for allowance of appeal on August 18, 2016, and he contacted his attorney on January 2, 2017—four and a half months later—to ask about the status of his appeal.[29] Petitioner does not allege "that he was prevented by prison staff from making an earlier inquiry of either the state court or his attorney."[30] Nor does he allege that his attorney was inaccessible. Also, after the Magistrate Judge ordered on February 8, 2017 that Petitioner show cause as to why his petition should not be dismissed as time-barred,[31] Petitioner filed an

---

[27] *LaCava*, 398 F.3d at 276 (citing Pa. R. App. P. 1123(a)); *see also Deangelis v. Rozum*, No. 13-7240, 2015 WL 4400012, at *5 (E.D. Pa. 2015) (collecting cases).

[28] It should be noted that although Petitioner does not argue against his counsel for failing to notify him, attorney errors or other mistakes, including lack of notice, in non-capital habeas cases are generally not sufficient to constitute extraordinary circumstances. *See LaCava*, 398 F.3d at 276 (citations and internal quotation marks omitted) ("We have stated that [i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."); *cf. Holland*, 560 U.S. at 562 (suggesting an attorney's conduct might be an extraordinary circumstance where the attorney failed to file his client's federal habeas petition on time, despite the client's multiple requests to do so; failed to adequately conduct research necessary to determine the proper filing date, despite the client's letters addressing the applicable legal rules; failed to inform his client in a timely manner about the state supreme court's decision in the case, despite the client's many requests for that information; and failed to communicate with his client over a period of years, despite the client's pleas for a response to his letters). Petitioner contacted his attorney on January 2, 2017 to ask about the status of his petition for allowance of appeal, to which his attorney incorrectly asserted that the appeal was denied on December 29, 2016. Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 13-14. Petitioner has not shown that his attorney's conduct rose to the level of an extraordinary circumstance. The incorrect statement by his attorney on January 2, 2017 had no bearing on the untimeliness, and even if Petitioner had argued that his attorney was to blame, thee is no evidence that the attorney's failure to forward the order sooner was anything more than simple attorney error.

[29] Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 11, 13. Petitioner later refers to the conversation date of January 2, 2017 as a typo, and instead recollects that the call was on January 3 or January 4, 2017. Pet'r's Traverse to Resp. in Opp'n to Pet. for Writ of Habeas Corpus [Doc. No. 17] at 1. Regardless, his potential mistake by one or two days does not change the analysis.

[30] *LaCava*, 398 F.3d at 276.

[31] Show Cause Order [Doc. No. 3].

inmate request, dated February 10, 2017, asking whether he received any legal mail from the Pennsylvania Supreme Court between November 29, 2016 and the date of his request.[32] Petitioner then received an allocatur docket sheet from the Pennsylvania Supreme Court, dated four days after his request, which shows that his petition was denied on November 29, 2016.[33] The fact that Petitioner's exhibits indicate his awareness of being able to receive documents from the prison (and quickly) as to the status of his denial order, coupled with the apparent accessibility of his attorney, demonstrates that Petitioner was not prevented from making an earlier inquiry and therefore timely filing his federal habeas petition.

### B. Reasonable Diligence

Even if Petitioner could demonstrate that his allegations are enough to establish extraordinary circumstances, he nonetheless has failed to show that he has been pursuing his rights diligently. The diligence required of a petitioner seeking equitable tolling "is reasonable diligence, not maximum feasible diligence."[34] Simply showing excusable neglect is not enough.[35] A petitioner's obligation to exercise reasonable diligence "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well."[36]

---

[32] Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at Ex. B.

[33] *Id.* at Ex. A.

[34] *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted). The Third Circuit has established a similar standard to that of the Supreme Court. *See Schlueter*, 384 F.3d at 74 (internal quotation marks and citations omitted) ("Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances.").

[35] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *New Castle Cty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1126 (3d Cir. 1997).

[36] *LaCava*, 398 F.3d at 277 (citing *Jones v. Morton*, 195 F.3d 153, 160 (3d Cir. 1999).

The R&R concluded that Petitioner did not exercise reasonable diligence in pursuing his rights solely because Petitioner remained a fugitive for 98 days after his sentencing.[37] Although the R&R addresses other district court cases that have determined that petitioners' decisions to flee were not an exercise of reasonable diligence, those cases involved petitioners who fled for several years before they were apprehended, which in and of itself explained their untimeliness.[38] The facts here are therefore distinguishable from the cases cited by the R&R because despite his fleeing, Petitioner *did* file a timely PCRA petition.

Moreover, the Third Circuit has held that a petitioner "is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition."[39] The Court therefore does not hold that the three months that Plaintiff was on the run is a determinative factor that prevents him from otherwise demonstrating reasonable diligence.

Here, Petitioner did timely exhaust his state court remedies, and he filed his federal habeas petition only one week after he learned from his counsel that his petition for allowance of appeal had been denied.[40] Furthermore, only four and one half months lapsed from the filing of his petition for allowance of appeal before he called his attorney to ask about its status.[41]

---

[37] R&R at 10.

[38] *See West v. Giroux*, No. 16-1185, 2017 WL 4544631, at *4 (E.D. Pa. June 20, 2017), *approved and adopted by West v. Giroux*, No. 16-1185, 2017 WL 4542730 (E.D. Pa. Oct. 11, 2017) (holding that petitioner did not diligently pursue his rights because he remained a fugitive for two years after his sentencing, which made any of his appeals or petitions untimely); *Sierra v. Lamas*, No. 13-6264, 2015 WL 4093908, at *11 (E.D. Pa. July 7, 2015) ("[Petitioner is not entitled to equitable tolling. [Petitioner]'s untimely filing is the result of his willful failure to appear at trial, and his decision to remain a fugitive for several years. . . . [H]e is obligated to take the justice system as he found it upon his return—out of time for filing a federal habeas petition.").

[39] *LaCava*, 398 F.3d at 277 (internal quotation marks and citation omitted).

[40] Pet'r's Objs. to Magistrate's R. & R. [Doc. No. 23] at 2; Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 13, 15.

[41] Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 11, 13.

However, a lengthy delay in filing a timely PCRA petition *may* be a factor to consider when determining the reasonableness of the time it took for petitioner to inquire about the status of his state collateral process.[42] In *LaCava*, for instance, petitioner knew that he had approximately three months remaining on his one-year limitations period to timely file a federal habeas petition once he filed a petition for allowance of appeal.[43] The Circuit found that petitioner did not exercise reasonable diligence by letting almost two years lapse from the date he filed his appeal before asking the Pennsylvania Supreme Court's Prothonotary's Office about its status.[44]

The particular circumstances of this case show Petitioner's lack of reasonable diligence. Although the time it took for Petitioner to inquire about the status of his appeal was significantly less than the time it took for the petitioner in *LaCava*, the time Petitioner had remaining on his one-year limitations period after filing his appeal was also significantly less. Given these facts, the Court must "consider [Petitioner]'s overall level of care and caution in light of his [] particular circumstances."[45]

Although he knew he would have only a couple of weeks remaining to file a timely federal petition once his appeal was denied, there is nothing in the record to suggest that Petitioner contacted anyone for more than four months to inquire about its status.[46] As Petitioner had the ability to either contact his attorney or to send an inmate request to the prison, and yet to his detriment, he did not take advantage of those opportunities until it was too late. Petitioner is

---

[42] *LaCava*, 398 F.3d at 277.

[43] *Id.*

[44] *Id.* By that time, the Pennsylvania Supreme Court had denied his petition for allowance of appeal 15 months earlier. *Id.* at 279.

[45] *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012) (internal quotation marks and citations omitted).

[46] Pet'r's Resp. to Ct.'s Order to Show Cause [Doc. No. 4] at ¶¶ 11, 13, 15.

not being held to a level of establishing that he has made "Herculean efforts" to demonstrate perseverance and diligence,[47] but the Court is constrained by the particular circumstances of this case to find that Petitioner has failed to demonstrate that he diligently pursued his rights.[48]

Finally, to the extent that he knew he had very limited time remaining, Petitioner did not need to wait until his federal claims were first exhausted in state court before filing his federal habeas petition. The United States Supreme Court has stated that when a petitioner is concerned about the timeliness of a federal habeas petition while waiting for state remedies to exhaust, the petitioner may "fil[e] a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."[49] Petitioner's failure to explore this avenue further demonstrates his overall lack of diligent pursuit.[50]

## IV. CONCLUSION

Petitioner's objections to the R&R are overruled. Because he has not made a substantial showing of the denial of a constitutional right, and there is no basis for concluding that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," a certificate of appealability will not issue.[51] An order will be entered.

---

[47] *See Ross*, 712 F.3d at 802 ("We cannot . . . expect Herculean efforts on the part of a lay person who is a convicted and incarcerated prisoner of limited cognitive abilities . . . .").

[48] *Cf. id.* (finding reasonable diligence where the petitioner "regularly and repeatedly . . . attempted to pursue his appeal through letters and phone calls to his attorney and to the courts" but was misled as to the status of his appeal by his attorney and by the trial court).

[49] *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citation omitted); *see also Heleva v. Brooks*, 581 F.3d 187, 190–92 (3d Cir. 2009) (highlighting the practice of filing "protective" habeas petitions in the Third Circuit).

[50] *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (internal quotations and citation omitted) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

[51] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation omitted).